**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**IN RE: LEHMAN BROTHERS HOLDINGS INC.**

**25-cv-1001 (ALC)**
**25-cv-1014 (ALC)**

**OPINION & ORDER**

**ANDREW L. CARTER JR., United States District Judge**:

Appellant Edward O'Hara, appearing *pro se*, brings appeals of two judgments in an adversary proceeding related to Lehman Brothers Holdings, Inc.'s ("Lehman") bankruptcy case in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"):  (1) the Bankruptcy Court's January 21, 2025 order dismissing Appellant's adversary proceeding and denying other requested relief in the bankruptcy case, and (2) the Bankruptcy Court's January 27, 2025 denial of Appellant's motion for reconsideration of its decision.

This case relates to foreclosure actions brought by Appellee U.S. National Bank Association (purportedly as trustee for a Lehman trust) in Connecticut Superior Court, which eventually resulted in the entry of a foreclosure judgment on Appellant's property.  For various reasons detailed further below, Appellant argues that the Bankruptcy Court erred in dismissing Appellant's case.  The crux of Appellant's claims is that Appellee's foreclosure actions were either improperly brought in a forum that lacked jurisdiction to hear them or that they violated the automatic stay in the Lehman bankruptcy case.  Appellant contends that, as a result, he suffered damages and, on appeal, also contends that the state court foreclosure actions and resulting judgments are void.

The Court, having consolidated Appellant's separately filed appeals, now considers them both herein in light of the appellate record below.[1]  Moreover, the Court considers the other motions filed by Appellant:  a motion to stay; a motion for sanctions against Appellee's counsel; and a motion for default and to strike improper pleadings by Appellee.  The Court also considers Appellee's motion to enjoin Appellant from filing vexatious pleadings.  For the reasons set forth below, the Court **AFFIRMS** in part the Bankruptcy Court's judgments, **REMANDS** the case for further proceedings consistent with this opinion, and **DENIES** all of the pending motions and requests for relief before the Court.[2]

## ISSUES RAISED ON APPEAL

The Court has compiled all of the issues raised in Appellant's separate appeals.  For ease of reference, the Court refers *infra* to the issues as numbered below:

1. Did the Bankruptcy Court err in "adjudicating a moot Complaint [] when in fact [Appellant] filed an Amended Complaint [] which was clearly labeled 'Amended Adversary Complaint?'";

---

[1] Appellant appears to have brought his first action (25-cv-1001) as an appeal of the Bankruptcy Court's January 21 insofar as it related to the Lehman bankruptcy case and his second action (25-cv-1014) as an appeal of the Bankruptcy Court's January 21 and January 27 judgments as they related to both the main Lehman bankruptcy case and Appellant's adversary proceeding.  Following an April 25, 2025 conference in connection with both actions, the Court ordered the consolidation of the actions because they related to the same judgments issued by the Bankruptcy Court.  *See* ECF No. 36.  However, Appellant filed an appeal brief in each action and the briefs raised two sets of issues on appeal, sometimes overlapping with one another.  *See* ECF No. 31, Case No. 25-cv-1001; ECF No. 31, Case No. 25-cv-1014.  In its opposition brief filed in the first action, Appellee responded to all the issues raised in both briefs filed by Appellant.  *See* ECF No. 41, Case No. 25-cv-1001.  The Court considers the issues brought on appeal in both of Appellant's actions in this single opinion.  Moreover, unless otherwise specified, all references to the docket shall refer to the docket in the consolidated action (25-cv-1001).

[2] Pursuant to Federal Rule of Bankruptcy Procedure 8019, oral argument must be allowed in a bankruptcy appeal unless the district judge "examine[s] the briefs and record and determine[s] that oral argument is unnecessary because (1) the appeal is frivolous; (2) the dispositive issue or issues have been authoritatively decided; or (3) the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument."  Having considered the Parties' papers and the underlying record, the Court finds that they adequately present the facts and issues, and that oral argument would not significantly aid the Court's decision-making process.  The Court thus decides the appeal on the papers.  *See In re L &L Wings, Inc*., No. 22-cv-1082, 2023 WL 2307431, at *1 n.2 (S.D.N.Y. Mar. 1, 2023).

2. Did the Bankruptcy Court err in "interpreting [Appellant's] Motion for Stay [] clearly labeled as Motion to Modify Prior Stay or Injunction Regarding Litigation Concerning the Lehman Trust, the LXS 2006-12N, as a Reply to [Appellee's] Motion to Dismiss?";

3. Did the Bankruptcy Court err in "misinterpreting [Appellant's] Proof of Process of Service [] as a 'Second Amended Complaint' when in fact the filings were proofs of Service for the Amended Adversary Complaint . . . clearly showing that this was in no way another, new amended Adversary Complaint, but simply the filing of proofs for the Amended Complaint?"

4. Did the Bankruptcy Court err in when it "stated that [Appellant] needed Court approval to [] file a 'Second Amended Adversary Complaint' when in fact [Appellant] never filed a second Amended Adversary Complaint?";

5. Did the Bankruptcy Court err when it "stated that 'the loan and [Appellant's] property have nothing to do with the Lehman Bankruptcy, nor can they affect the Lehman's reorganization' as in fact the Lehman Trust, the LXS 2006-12N is: (a) an asset of the Lehman Bankruptcy clearly listed as such in Exhibit A, Petition to the New York Supreme Court . . . filed on 4/4/2018, (b) as well as on Exhibit B of the same Petition . . . (c) as well as on Lehman Bankruptcy Case 1:08-bk-13555, Docket # 55096 . . . (d) as well as Lehman Bankruptcy Case 1:08-bk-13555, Docket # 55232 . . . (e) as well as on Exhibit A of Consent Order on 7/9/2018 . . . (f) Subject to Automatic Stay Order, by Judge James Peck? . . . Lehman bankruptcy Case, 1:08-bk-13555, ECF Doc. 48?";

6.  Did the Bankruptcy Court err in "stating that a judgment made in violation of U.S. Federal Law (Section 362 Automatic Stay) was subject to res judicata?"

7.  Did the Bankruptcy Court err in "ignoring that [Appellee] violated, twice, a U.S. federal Court order (Section 362 Automatic Stay) in filing litigation against [Appellant and his brother] in [the Connecticut Superior Court]?"

8.  Did the Bankruptcy Court clearly err in "not recognizing that the Lehman Bankruptcy case had a Section 362 Stay in place over the [] LXS 2006-12N from 9/15/08 . . . until . . . July 2017 . . . which would have stayed, restrained and precluded the filing in [State Court] . . . on 8/22/2011 . . . and on 9/30/2013?"';

9.  Did the Bankruptcy Court clearly err in "stating . . . that [Appellant] had already litigated, in the State [Court], the standing issues could have been and were litigated in the state foreclosure action, when in fact the issue of the Lehman Bankruptcy having jurisdiction over the Lehman Trust, the LXS 2006-12N was not brought up even in the state foreclosure case and was only recently discovered in in July 2024?";

10. Did the Court clearly err "in ignoring [Appellant's] Amended Adversary Complaint?";

11. Did the Court clearly err in "stating that [Appellant] provided no evidence as to his statement that the reinstatement funds sent in 2012 were not sent to the U.S. trustee in the Lehman bankruptcy case, when in fact [Appellant] provided evidence of a wire transmittal . . . . which shows that the $137,657.64 was sent to One West Bank?";

12. Did the Court clearly err in "ignoring that [Appellee] broke a U.S. Federal Law by ignoring the Section 362 Stay over all litigation in the [sic] concerning the Lehman Trust LXS 2006-12N as said trust was an asset in the Lehman Bankruptcy Estate?";

13. Did the Court err in "failing to reinstate the stay and to Clarify that the [] LXS 2006-12N, was an asset of the Lehman Bankruptcy Estate and was under a stay order from 9/16/2008 until 7/6/2017, which violated [Appellant's] due process rights to seek damages as a result of a U.S. Federal Law (U.S. bankruptcy Code, Sect. 362, Automatic Stay)?"; and

14. Did the Court err in "violating the 14th Amendment due process U.S. constitutional Rights of [Appellant] in failing to issue a Stay order, even when [Appellee] had violated U.S. federal law, that is the Section 362 Stay Order?"

## BACKGROUND

### I.    Factual Background

The following summary of relevant facts is drawn from the Parties' moving papers and exhibits, as well as facts recited in the Bankruptcy Court's January 21, 2025 order, *In re Lehman Bros. Holdings Inc.*, No. 24-04034, 2025 WL 261959 (Bankr. S.D.N.Y. Jan. 21, 2025) (the "January 21 Order") and its January 27, 2025 order *In re Lehman Bros. Holdings Inc.*, ECF No. 18, No. 24-04034 (Bankr. S.D.N.Y. Jan. 27, 2025) (the "January 27 Order").  Further, the Court may take judicial notice of court documents and may do so at any stage of the proceeding.  *In re Matter of Ditech Holding Corp.*, No. 23-cv-2482, 2025 WL 896468, at *18 (S.D.N.Y. Mar. 24, 2025) (citing *Go New York Tours Inc. v. Vector Media, LLC*, No. 19-cv-10144, 2020 WL 3250612, at *1 n.1 (S.D.N.Y. June 16, 2020)).

On May 6, 2006, Appellant and his brother (a nonparty) executed a promissory note in the principal amount of $695,000 in favor of MortgageIt, Inc. (Appellee's predecessor-in-interest). *See* January 21 Order at *1. That same day, Appellant and his brother executed a mortgage in favor of Mortgage Electronic Registration Systems Inc. (as nominee for MortgageIt), pledging a property located at 1414 King Street, Greenwich, Connecticut. *Id.* Appellant and his brother failed to pay on the mortgage. *Id.* at *2.

On or around October 11, 2011, Appellee (as trustee for the LXS 2006-12 N trust, which Appellant purports to be a Lehman trust) filed a foreclosure action against Appellant in Connecticut Superior Court. *See id.* In 2012, Appellant purportedly paid $137,657.64 to settle the issue and temporarily avoided foreclosure. *Id.*

On September 30, 2013, Appellee brought another foreclosure action against Appellant in Connecticut Superior Court. *Id.* On December 14, 2025, the Connecticut Superior Court granted Appellee's motion for judgment of foreclosure and sale of the property. *Id.* Despite Appellant's numerous attempts in both state and federal court to forestall the foreclosure, the 2015 foreclosure judgment continues to stand, although it was updated in 2024 to accurately reflect the amount owed. *See id.*

On October 31, 2024, Appellant filed his original Adversary Complaint, thereby commencing the adversary proceeding connected to the Lehman bankruptcy case, which began in 2008. ECF No. 1, Bankr. Case No. 24-4034. On December 5, 2024, Appellee filed a motion to dismiss the Adversary Complaint. ECF No. 5, Bankr. Case No. 24-4034. On December 16, 2024, Appellant filed an Amended Adversary Complaint. ECF No. 7, Bankr. Case No. 24-4034 ("AAC"). On December 30, 2024, Appellant filed a document labeled as an Amended Complaint on the docket, but which actually appears to be a document attesting to service on

Appellee.  ECF No. 11, Bankr. Case No. 24-4034.  On January 16, 2025, Appellee filed a motion to dismiss the adversary proceeding in light of Appellant's filing of the Amended Adversary Complaint.  ECF No. 12, Bankr. Case No. 24-4034

In the proceedings below, Appellant sought actual and punitive damages from Appellee (and declaratory judgment for the same), alleging that he could not profit from the sale of the property and had incurred costs due to the purportedly fraudulent foreclosure litigation that had taken place over the last few years.  *See* January 21 Order at *3–4; AAC at 1.  Appellant contends that Appellee intentionally committed fraud upon the court by filing foreclosure actions in state court, a forum that lacked jurisdiction for the foreclosure.  *See* AAC at 6–9.  Appellant claims that the actions should have been filed in the Bankruptcy Court because—pursuant to an unspecified order purportedly issued by Judge Peck, a prior judge presiding over the Lehman bankruptcy case—the Bankruptcy Court retained sole jurisdiction over matters concerning the LXS 2006-12 N trust.  *See id.* at 3.  Appellant reincorporates these allegations as to a count of litigation abuse spanning a period of thirteen years.  *Id.* at 8.

Moreover, Appellant alleges that Appellee knowingly violated the automatic stay in the Lehman bankruptcy case (which he alleges was in effect from September 15, 2008, to on or about June 1, 2012) by filing a foreclosure action.  *See id.* at 3, 7.  Appellant also claims that Appellee failed to notify the Connecticut Superior Court of the Lehman bankruptcy and that Appellee failed to send reinstatement proceeds to the trustee in the Lehman bankruptcy.  *Id.* at 6–8.

On December 9, 2024, Appellant also filed a motion to reimpose the lapsed automatic stay in the Lehman bankruptcy case.  *See* ECF No. 6 at 1, Bankr. Case No. 24-4034; *see also* January 21 Order at *5.  The motion was based on claims similar to those alleged in the

Amended Adversary Complaint, but Appellant also contended in this motion that the assignment of the mortgage from Mortgage Electronic Registration Systems to Appellant was invalid and fraudulent because it was brought during the Lehman bankruptcy stay.  ECF No. 6 at 3, Bankr. Case No. 24-4034.  Appellant also alleges that the loan in question was purportedly an asset of a Goldman Sachs trust and a Merrill Lynch trust in the year it was issued.  *Id.* at 3.

Appellant also filed various documents in the Lehman bankruptcy case.  On September 30, 2024, he filed a motion for clarification.  ECF No. 61691, Bankr. Case. 08-13555.  That same day, he filed a motion for an automatic stay or injunction of the Connecticut Superior Court case that resulted in his 2015 foreclosure judgment.  ECF No. 61692, Bankr. Case. 08-13555.  Also that same day, Appellant filed a document styled as a notice of appearance but containing substantive arguments.  ECF No. 61693, Bankr. Case. 08-13555.  On October 31, 2024, he filed a copy of the original Adversary Complaint to the Lehman bankruptcy docket.  ECF No. 61701, Bankr. Case No. 08-13555.

On January 21, 2025, the Bankruptcy Court entered an opinion dismissing Appellant's adversary proceeding and denying requests for any other relief, as well as ordering Appellant to cease filing frivolous pleadings.  *See* ECF No. 13, Bankr. Case No. 24-4034; *see also* January 21 Order.  The Bankruptcy Court concluded that it could not consider Appellant's claims on *Rooker-Feldman* grounds and did not reach any other bases for dismissal.  *See id.* at *6–8.  On January 24, 2025, Appellant filed a motion to reargue or for reconsideration of the Bankruptcy Court's January 21 Order and seemingly also sought reconsideration of a 2017 pleading filed by another party in the Lehman bankruptcy case.  ECF No. 16, Bankr. Case No. 24-4034.  On January 27, 2025, the Bankruptcy Court denied Appellant's motion to reargue or for reconsideration.  *See* January 27 Order.

## II.     Procedural History

On February 4, 2025, Appellant's notice of appeal of the January 21 Order (insofar as it related to the Lehman bankruptcy case) was docketed with this Court in the initial civil action, ECF No. 1.  That same day, Appellant's notice of appeal of the January 21 and January 27 Orders (as related both to the Lehman bankruptcy case and the adversary proceeding) was docketed with this Court in the subsequent civil action.  ECF No. 1, Case No. 25-cv-1014.

On April 10, 2025, the Court ordered the Parties to appear for a telephonic status conference on April 25, 2025 in connection with both cases and, particularly, to discuss why the cases should not be consolidated.  ECF Nos. 29, 30, Case No. 25-cv-1001; ECF No. 29, 30, Case No. 25-cv-1014.  After considering the Parties' arguments, the Court ordered the consolidation of both actions.  *See* ECF No. 36.  On April 11, 2025, Appellant filed a brief in each of the appeals.  ECF No. 31, Case No. 25-cv-1001; ECF No. 31, Case No. 25-cv-1014.  On May 12, 2025, Appellee filed its opposition brief as to both appeals in the consolidated docket.  ECF No. 41.  On May 23, 2025, Appellant filed his reply as to both appeals in the consolidated docket.  ECF No. 44.

In connection with his appeals, Appellant also filed a number of motions.[3]  On March 24, 2025, Appellant filed a motion for sanctions against Appellee's counsel.  ECF No. 22.  On April 15, 2025, Appellee filed its opposition to the motion.  ECF No. 32.  On April 4, 2025, Appellant filed an amended motion for default and to strike for improper pleadings.  ECF No. 26.  On April 17, 2025, Appellee filed an opposition to the motion for default and to strike and also moved to enjoin further vexatious pleadings by Appellant.  ECF No. 34.  On May 1, 2025, Appellant filed

---

[3] Because certain of these motions were amended (sometimes more than once), the Court only lists the operative motions for brevity, but directs the public to the dockets of both actions for a full accounting of all of the motions filed in these appeals.

an amended motion to stay the Bankruptcy Court's judgment or to reimpose the prior stay in the Lehman bankruptcy pending the appeal.  ECF No. 38.  On May 6, 2025, Appellee filed its opposition to the amended motion to stay.  ECF No. 39.  On May 9, 2025, Appellant filed an addendum to both the motion to stay and the motion for default and to strike.[4]  ECF No. 40.

STANDARD OF REVIEW

The Court has jurisdiction to hear appeals from bankruptcy courts under 28 U.S.C. § 158(a), which provides that "[t]he district courts of the United States shall have jurisdiction to hear appeals . . . from final judgments, orders and decrees . . . [and] with leave of the court, from other interlocutory orders and decrees . . . of bankruptcy judges[.]"

"Generally in bankruptcy appeals, the district court reviews the bankruptcy court's factual findings for clear error and its conclusions of law de novo."  *In re Charter Commc'ns, Inc.*, 691 F.3d 476, 483 (2d Cir. 2012) (citing Fed. R. Bankr. P. 8013), *cert. denied sub nom. Law Debenture Tr. Co. of New York v. Charter Commc'ns*, 569 U.S. 968 (2013).  "Under the clear error standard, '[t]here is a strong presumption in favor of a [bankruptcy] court's findings of fact if supported by substantial evidence,' and a reviewing court will not upset a factual finding 'unless [it is] left with the definite and firm conviction that a mistake has been made.'"  *Morillo v. Wells Fargo Bank, N.A.*, No. 19-cv-8183, 2020 WL 2539068, at *2 (S.D.N.Y. May 19, 2020) (quoting *Travellers Int'l A.G. v. Trans World Airlines, Inc.*, 41 F.3d 1570, 1574 (2d Cir. 1994)) (alterations in the original).  A court "abuses its discretion if it (1) bases its decision on an error of law or uses the wrong legal standard; (2) bases its decision on a clearly erroneous factual

---

[4] The Court instructed Appellant at the April 25, 2025, conference that he could file an omnibus reply (if he so wished) to Appellee's motions in a single document by May 9, 2025.  Therefore, the Court construes Appellant's addendum to serve as his reply with respect to his motion to stay and motion for default and to strike.  The record does not show that Appellant filed any reply in connection with his motion for sanctions, so the Court presumes Appellant did not wish to file a reply.

finding; or (3) reaches a conclusion that, though not necessarily the product of a legal error or a clearly erroneous factual finding, cannot be located within the range of permissible decisions." *EEOC v. KarenKim, Inc.*, 698 F.3d 92, 99–100 (2d Cir. 2012) (internal quotation marks omitted).

In conjunction with these standards, "the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." *In re Motors Liquidation Co.*, No. 13-cv-1721, 2015 WL 1781238, at *1 n.1 (S.D.N.Y. Apr. 15, 2015) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)), *appeal dismissed*, No. 15-1643 (2d Cir. June 23, 2015).

## DISCUSSION

The Court first considers all the issues raised by Appellant in both of his bankruptcy appeals.  As explained below, most of the issues raised on appeal are either abandoned, baseless, or do not provide cause for reversible error.  However, the Court has identified jurisdictional questions that require the Court to affirm the Bankruptcy Court's judgments only in part and remand this case for further proceedings as to Appellant's fraud claims.  Next, the Court considers Appellant's other relief sought in his appeals:  a motion to stay the Bankruptcy Court's judgment or reimpose the automatic stay in the Lehman bankruptcy, a motion for sanctions against Appellee's counsel, and a motion to strike certain pleadings by Appellee and thus find Appellee in default.  The Court concludes that all of Appellant's motions are either moot or without merit, denying them in their entirety.  Last, the Court deals with Appellee's unopposed motion to enjoin Appellant from filing vexatious pleadings before the Court.  Because this case will be remanded to the Bankruptcy Court, the Court denies Appellee's motion as moot.

## I.    The Bankruptcy Appeals

The Court—having determined that many of the issues raised by Appellant can be resolved on similar grounds—groups the issues to facilitate their disposition.  The Court references the issues as they are numbered in the section titled "Issues Raised on Appeal" above.

### a.  Waived Issues

At the outset, the Court considers the issues that were raised by Appellant but not actually argued by him.  In Issue 13, Appellant asks the Court to find that the Bankruptcy Court erred in failing to reinstate the automatic stay in the Lehman bankruptcy and clarify that the LXS 2006-12 N trust was an asset of the Lehman bankruptcy estate.  ECF No. 31 at 21.  Somewhat similarly, in Issue 14, Appellant asks the Court to find that the Bankruptcy Court erred in failing to issue a stay order, despite Appellee's violation of the stay order.  *See id.*  As to both issues, Appellant claims Appellee violated his due process rights.

The Court does not identify any argument by Appellant, either in his opening brief or his reply, in support of these issues.  "Issues not argued in briefs are considered waived and not addressed on appeal."  *See Authentic Hansom Cabs, Ltd. v. Nisselson*, No. 03-cv-9468, 2004 WL 2997774, at *5 (S.D.N.Y. Dec. 27, 2004), *aff'd sub nom. In re Fayolle*, 159 F. App'x 221 (2d Cir. 2005) (citing *Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998)).

Putting aside whether Appellant properly argued these issues, it is clear that the Bankruptcy Court denied Appellant's stay motion in part upon a finding that the Appellant did not explain why the stay in the Lehman bankruptcy should be reimposed.  *See* January 21 Order at *5.  Now, on appeal, Appellant appears to try to introduce new facts to substantiate the imposition of an automatic stay.  But based on the appellate record, the Court finds no reason to disturb the Bankruptcy Court's conclusions as to these issues and does not credit them on appeal.

### b. Meritless Issues

Various issues raised by Appellant are baseless upon a review of the Bankruptcy Court's judgments and the grounds upon which they are based.

In Issue 2, Appellant asks the Court to conclude that the Bankruptcy Court erred in interpreting his motion for a stay as a reply to the motion to dismiss. *See* ECF No. 31, at 15, 45, Case No. 25-cv-1014. Although the Bankruptcy Court stated that the *Amended Adversary Complaint* "could be interpreted as [Appellant's] reply brief" (this is discussed further in the next section), there is no indication that the Bankruptcy Court interpreted the stay motion as a reply brief and, in any event, the Bankruptcy Court plainly denied the stay motion on jurisdictional grounds. *See* January 21 Order at *2. This issue is meritless.

In Issues 3 and 4, Appellant asks the Court to conclude that the Bankruptcy Court erred by interpreting his proofs of process of service as a Second Amended Complaint and by stating that the Bankruptcy Court's approval was needed to file a Second Amended Complaint. *See* ECF No. 31, at 15–16, 45, Case No. 25-cv-1014. The Bankruptcy Court stated that the "Second Amended Complaint does not add any arguments or claims, nor does it respond to the [motion to dismiss], so this Court will not take it into consideration in determining this case." January 21 Order at *2. Despite the manner in which the document was docketed, the Bankruptcy Court clearly did not base its judgment upon any Second Amended Complaint. Moreover, in its discussion of the many pleadings in the case, the Bankruptcy Court cited to Federal Rule of Civil Procedure 15, which governs the amendment of pleadings. *Id.* The Court finds no error in the Bankruptcy Court's recitation of a procedural rule. As such, these issues are meritless.

In Issue 5, Appellant asks the Court to conclude that the Bankruptcy Court erred when it stated the mortgage loan had nothing to do with the Lehman bankruptcy and cannot affect Lehman's reorganization. *See* ECF No. 31, at 16–17, 26, Case No. 25-cv-1014; ECF No. 31, at

19–21, Case No. 25-cv-1001.  The Bankruptcy Court never asserted this as a matter of fact; it merely quoted Appellee's argument in its motion to dismiss.  This issue is meritless.

Similarly, in Issues 6 and 9, Appellant asks the Court to conclude that the Bankruptcy Court erred by (1) stating that the foreclosure judgment was subject to *res judicata* and (2) stating that the question of whether Appellee had standing to bring the foreclosure action had already been litigated.  *See* ECF No. 31, at 17–18, 20, 32, Case No. 25-cv-1014; ECF No. 31, at 17, 28, 40, Case No. 25-cv-1001.  This is baseless.  As the Court explains further below, the Bankruptcy Court based its ruling solely on *Rooker-Feldman* grounds.  Any references to the applicability of *res judicata* or the merits of Appellant's standing arguments in the January 21 Order appear plainly in the context of summarizing Appellee's dismissal arguments.  Thus, these issues are meritless.

### c.  Pleading Issues

In Issue 1, Appellant asks the Court to conclude that the Bankruptcy Court clearly erred by adjudicating his original Complaint when he had in fact filed an Amended Adversary Complaint.  ECF No. 31 at 15, 44–45, Case No. 25-cv-1014.  In Issue 10, Appellant asks the Court to conclude that the Bankruptcy Court clearly erred in ignoring his Amended Adversary Complaint.  *Id.* at 18, 31.

The Bankruptcy Court's January 21 Order directly addressed the numerous additional pleadings introduced after the initial Adversary Complaint was filed, citing Federal Rule of Civil Procedure 15(a) to explain that once "a motion to dismiss is filed, a plaintiff has a right to amend his pleading once within twenty-one days of the filing of the motion to dismiss, and after that, may only amend with the opposing party's written consent or the court's leave."  January 21 Order at *2.

In summarizing the procedural history of the adversary proceeding, the Bankruptcy Court stated that Appellant's stay motion (filed December 9, 2024) added additional claims against Appellant, but noted that a "stay motion is not a substitute for an amended complaint." *Id.* at *2. The Bankruptcy Court then stated that Appellant's First Amended Complaint (filed December 16, 2024) "largely restates the allegations in the original Complaint, and adds the argument that U.S. Bank violated the automatic stay[,]" but that the First Amended Complaint "responds in substance to the Motion to Dismiss, so rather than discounting it as an improper second amended complaint filed without this Court's or [Appellee's] permission, it could be interpreted as [Appellant's] reply brief." *See id.* at *2, 4. In a further complication of the procedural posture, a filing by Appellant appearing to show service of the Amended Complaint (docketed on December 30, 2024) was construed by the Bankruptcy Court as a Second Amended Complaint, even though it contains no additional claims or argument. *See id.* at *2.

It is true that the January 21 Order specifically refers to dismissal of the original Complaint in its dismissal grant. *Id.* at *8 ("This Court cannot hear O'Hara's Complaint nor his second Stay Motion"). However, "[t]he submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Triestman*, 470 F.3d at 474 (2d Cir. 2006) (cleaned up). Even if the Bankruptcy Court deemed the Amended Adversary Complaint to serve as a reply to Appellee's motion to dismiss (the Court agrees that the Amended Adversary Complaint indeed tacks on legal arguments responsive to Appellee's *Rooker-Feldman* and *res judicata* arguments), it nevertheless included Appellant's additional allegations in its opinion. There is no clear indication from the record that the Bankruptcy Court did not consider all of Appellant's pleadings in reaching its decision.

15

Indeed, in connection with the filing construed as the Second Amended Complaint, the Bankruptcy Court clearly distinguished this from the other pleadings, concluding that "even the most generous interpretation of [Appellant's] pleadings leaves his Second Amended Complaint . . . out in the cold[,]" and the Bankruptcy Court stated that it "would not take [the Second Amended Complaint] into consideration in determining this case." *Id.*

More importantly, the Bankruptcy Court ruled solely on jurisdictional issues given the nature of Appellant's claims. "Notwithstanding the liberal pleading standard afforded [to] *pro se* litigants, federal courts are courts of limited jurisdiction and may not preside over cases if they lack subject matter jurisdiction." *Dieujuste v. Sin*, 731 F. Supp. 3d 440, 446 (E.D.N.Y. 2024). (cleaned up), *reconsideration denied*, 734 F. Supp. 3d 232 (E.D.N.Y. 2024), *and aff'd*, No. 24-1522-CV, 2025 WL 65956 (2d Cir. Jan. 10, 2025)). Moreover, "[a]lthough courts hold *pro se* complaints to less stringent standards than formal pleadings drafted by lawyers, *pro se* litigants must establish subject matter jurisdiction." *Id.* at 445. Having all of Appellant's pleadings before it, the Bankruptcy Court nevertheless concluded that "[n]o matter the (questionable, in this case) merits of [Appellant's] claims, this Court lacks subject matter jurisdiction to *hear every one of the claims he alleges* because they are all, in substance, attempts to appeal the Foreclosure Judgment." January 21 Order at *7 (emphasis added).

In any event, as the Court has previewed, this case will be remanded to the Bankruptcy Court for further proceedings only as to Appellant's fraud claims because the Court agrees that *Rooker-Feldman* presents a jurisdictional bar to some, but not all, of Appellant's claims. To the extent Appellant alleged fraud claims in the Adversary Complaint or the Amended Adversary Complaint (which the Court construes as properly filed), the Bankruptcy Court will be directed to consider them on remand.

### d.  Jurisdictional Issues

Issues 7, 8, 11, and 12 all implicate the jurisdictional issues at the core of this case. Accordingly, it is helpful to step back and consider what exactly Appellant alleged and sought from the Bankruptcy Court in the case below.  Appellant seeks damages in connection with Appellee's two foreclosure actions in Connecticut state court, a forum that (according to Appellant) lacked jurisdiction to hear the foreclosure cases.  *See* AAC at 5–9.  Appellant also alleges that Appellee violated the automatic stay by filing a state court action during the stay period in the Lehman bankruptcy, which he alleges lasted from September 15, 2008 to on or about June 1, 2012.  *Id.* at 2.

It is equally helpful to consider what Appellant did *not* seek in the Amended Adversary Complaint.  Although he stated that the foreclosure proceedings were brought fraudulently and suggested that courts generally void judgments where they were rendered by a court lacking subject matter jurisdiction, Appellant did not specifically request that the Connecticut state court's foreclosure judgment be reviewed or voided.  On appeal, however, he argues that violations of "[bankruptcy] stay orders would have made any action [or] proceeding to be 'void and lacking in vitality.'"  *See* ECF No. 31 at 11 (quoting *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 527 (2d Cir. 1994)).  On this basis, he now asks the Court to remand this case and order the Bankruptcy Court to vacate the 2015 foreclosure judgment.  ECF No. 31 at 41–42.

As the Court explains below, it cannot conclude the Bankruptcy Court erred by ignoring the Lehman bankruptcy automatic stay's purported effect on the 2013 foreclosure action and the 2015 foreclosure judgment, but it must remand this case for further proceedings with respect to Appellant's fraud claims.

### i. *The Bankruptcy Court Erred in Concluding That* Rooker-Feldman *Bars All of Appellant's Claims*

The Court begins by considering the Bankruptcy Court's *Rooker-Feldman* analysis, the only grounds upon which the Bankruptcy Court decided Appellee's motion to dismiss.  Under the *Rooker-Feldman* doctrine, federal district courts lack jurisdiction over cases that boil down to appeals of state court judgments.  *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp*., 544 U.S. 280, 283–84 (2005).  There are "four requirements for the application of *Rooker–Feldman*": (1) the federal-court plaintiff lost in state court; (2) the plaintiff "complain[s] of injuries caused by a state court judgment"; (3) the plaintiff "invite[s] ... review and rejection of that judgment"; and (4) the state judgment was "rendered before the district court proceedings commenced." *Hoblock v. Albany Cnty. Bd. of Elecs.*, 422 F.3d 77, 85 (2d Cir. 2005) (internal alterations and quotation marks omitted).

The Court concludes that the Bankruptcy Court erred in summarily applying *Rooker-Feldman* to all of Appellant's claims.  With respect to Appellant's claims arising from Appellee's 2011 foreclosure action, the record does not indicate that such action resulted in any state court judgment against Appellant.  On the contrary, the record is clear that Appellant paid $137,657.64 to settle Appellee's claims in connection with this action.  Thus, because there was no state court judgment to review, the 2011 foreclosure action does not implicate *Rooker-Feldman*.

But the 2013 foreclosure action and the resulting 2015 foreclosure judgment against Appellant undoubtedly implicate *Rooker-Feldman*, despite Appellant's claims that the Connecticut Superior Court never had jurisdiction over them.  The Bankruptcy Court notes that "[i]n the Second Circuit, attacks on state court foreclosure judgments are barred by *Rooker-Feldman*."  January 21 Order at *6 (collecting cases).  The Court agrees.  In fact, *Rooker-*

*Feldman* applies even when a party contends—as Appellant has here—that a judgment "was obtained through a fraudulent scheme to interfere with the judicial process[.]" *See Worthy-Pugh v. Deutsche Bank Nat'l Tr. Co.*, 664 F. App'x 20, 21 (2d Cir. 2016); *see also Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 427 (2d Cir. 2014) ("To the extent [the plaintiff] asks the federal court to grant him title to his property because the foreclosure judgment was obtained fraudulently, *Rooker-Feldman* bars [his] claim."). Thus, to the extent Appellant seeks to vacate the 2015 foreclosure judgment, the Bankruptcy Court was correct in applying *Rooker-Feldman*.

This is even true despite Appellant's contention that the mortgage is part of Lehman's estate and was thus subject to the automatic bankruptcy stay, as he has broadly alleged in the pleadings. Typically, the filing of a bankruptcy petition triggers an automatic stay pursuant to 11 U.S.C. § 362(a). "It is effective immediately upon the filing of a bankruptcy petition without further action. . . . The scope of the stay is broad, encompassing almost any type of formal or informal action taken against the debtor or the property of the [bankruptcy] estate." *In re Salov*, 510 B.R. 720, 726 (cleaned up).

Although normally the "*Rooker–Feldman* doctrine bars lower federal courts from reviewing state court decisions . . . there is an exception to this doctrine. A bankruptcy court can 'override' a state court judgment if the state court judgment is void *ab initio*." *In re Killmer*, 501 B.R. 208, 213 (Bankr. S.D.N.Y. 2013) (citing *See In re Dabrowski*, 257 B.R. 394, 405–06. (Bankr. S.D.N.Y. 2001)). "In the Second Circuit, actions taken in violation of the automatic stay are generally void *ab initio*." *In re Ebadi*, 448 B.R. 308, 313 (Bankr. E.D.N.Y. 2011) (citing *Rexnord*, 21 F.3d at 527; *48th St. Steakhouse, Inc. v. Rockefeller Grp., Inc.* 835 F.2d 427, 431 (2d Cir. 1987)).

On appeal, Appellant invokes *Rexnord* to argue that violations of "[bankruptcy] stay orders would have made any action [or] proceeding to be 'void and lacking in vitality.'" *See* ECF No. 31 at 11 (quoting *Rexnord*, 21 F.3d at 527). Appellant's chances at voiding the 2015 foreclosure judgment hinge primarily on this theory. Indeed, as Appellant states at the beginning of his reply brief, "[t]he key point is that the Lehman Trust LXS 2006-12 N was part of the Lehman Bankruptcy and an asset of the Lehman Bankruptcy estate . . . subject to the [a]utomatic stay, Section 362 from 9/15/2008 until 7/6/2017." ECF No. 44 at 3.

As to this issue, Appellee argues that because "Appellant was not a debtor in bankruptcy at the time the [2013] Foreclosure Action was initiated or when the Foreclosure Judgment was entered" and "the LXS 2006-12N trust was not an asset in the Lehman Bankruptcy[,]" the automatic stay therefore does not apply to Appellant. *See* ECF No. 41 at 21–22. But even taking Appellant at his word and assuming *arguendo* that the automatic stay could apply to him, Appellant alleged in his pleadings that the automatic bankruptcy stay ended on or about June 1, 2012. The 2013 foreclosure action and the December 15, 2015 foreclosure judgment therefore postdate the end of the automatic stay and, as such, did not violate the automatic stay.

It was not until this appeal that Appellant first suggested that the automatic stay in the Lehman bankruptcy lasted until July 6, 2017, long after the 2013 foreclosure action was commenced and the 2015 foreclosure judgment was rendered. The Bankruptcy Court, having before it only the facts alleged by Appellant, could not have erred in not considering that the 2013 foreclosure action or the 2015 foreclosure judgment could be void *ab initio*. Therefore, the Court affirms the Bankruptcy Court's dismissal of Appellant's claims insofar as they seek review and rejection of the 2013 foreclosure action or the 2015 foreclosure judgment.

### ii. *Plaintiff's Fraud Claims Survive* Rooker-Feldman

All that is left are Plaintiff's claims for damages resulting from Appellee's purported fraud. More specifically, he contends that Appellees (1) knew that the Connecticut Superior Court lacked jurisdiction over his foreclosure pursuant to an unspecified order in the Lehman bankruptcy case; and (2) violated the automatic stay then in effect. AAC at 2. Appellant seeks damages of $137,657.64 (the amount he paid to Appellee to settle the case) plus interest, as well as punitive damages totaling $5 million. *Id.* at 5–6.

"To the extent [Appellant's] *pro se* complaint can be liberally construed as asserting fraud claims that are not barred by *Rooker–Feldman*—because they seek damages from [Appellee] for injuries [Appellant] suffered from their alleged fraud, the adjudication of which does not require the federal court to sit in review of the state court judgment"—the Bankruptcy Court should do so on remand. *See Vossbrinck*, 773 F.3d at 427 (where plaintiff alleged that defendants engaged in fraud during the state foreclosure action and the district court dismissed the case on *Rooker-Feldman* grounds, the appellate court concluded the district court erred in dismissing plaintiff's fraud claims outright, but affirmed the dismissal in light of the district court's alternative grounds for dismissal). Here, where the adversary proceeding was dismissed solely on *Rooker-Feldman* grounds, the Bankruptcy Court is instructed to hear Appellant's fraud claims to the extent they seek damages from Appellee, but it cannot consider any claims that seek to void or overturn the 2015 foreclosure judgment in light of the *Rooker-Feldman* bar.[5]

---

[5] For the avoidance of doubt, the Court notes that it does not make any judgment as to the sufficiency of Appellant's fraud claims beyond their ability to overcome the *Rooker-Feldman* bar. So long as the Bankruptcy Court proceeds according with this opinion, the Court cannot bar the Bankruptcy Court from considering other possible grounds for dismissal such as those raised by Appellee below, e.g., *res judicata*, the statute of limitations, and failure to state a claim.

## II.    Other Requested Relief

Having disposed of the appeals, the Court now deals with the collateral motions filed in the appeals.

### a.  Amended Motion to Stay

Appellant asks "that the Court impose a stay, or reimpose the former stay, in [the] U.S. bankruptcy Court of any litigation involving the Lehman Trust, the 'LXS 2006-12N' trust, pending the outcome of this appeal."[6]  ECF No. 38.  The Court disposes of this appeal in this opinion; therefore, this motion is moot.

### b.  Motion for Sanctions

Appellant complains of purported misconduct by Appellee's counsel.  Federal Rule of Civil Procedure 11 imposes a duty on attorneys to certify that they have conducted a reasonable inquiry and have determined that any papers filed with the court are well-grounded in fact, legally tenable, and not interposed for any improper purpose.  *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393–94 (1990) (interpreting Rule 11).  Rule 11 serves to "deter baseless filings in District Court . . . [and] streamline the administration and procedure of the federal courts."  *See id.* at 393.  In deciding whether sanctions should be imposed under Rule 11, courts apply an objective standard of reasonableness.  *United States v. Int'l Bhd. of Teamsters*, 948 F.2d 1338, 1344 (2d Cir. 1991).  Sanctions are appropriate "when it appears that a competent attorney could not form the requisite reasonable belief as to the validity of what is asserted in the paper" but courts must "avoid hindsight and resolve all doubts in favor of the signer."  *Oliveri v. Thompson*, 803 F.2d 1265, 1275 (2d Cir. 1986), *cert. denied*, 480 U.S. 918 (1987).

---

[6] On April 14, 2025, Appellant also filed a document titled "MOTION FOR AN AUTOMATIC STAY OR INJUNCTION OF CT SUPERIOR COURT CASE: FST CV 13 6020232 S, U.S. BANK NATIONAL ASSOCIATION, as TRUSTEE for the LXS 2006-12 N V. O'HARA, FRANCIS ET AL."  ECF No. 33.  This appears to be a copy of the motion filed before the Bankruptcy Court on September 30, 2024.  The Court therefore does not consider this motion herein.

Appellant seeks sanctions against counsel for Appellee, generally contending that Appellee's counsel has made false misrepresentations to defraud the Court and seeks to undermine the justice system by covering up their client's purported bankruptcy fraud. *See generally* ECF No. 22. But these purported misrepresentations all seem to be Appellee's counsel's general legal arguments and recitation of the facts before this Court and in other litigation. Indeed, Appellant bakes in legal conclusions to try to show that Appellee's counsel acted objectionably when he states that "ACTIONS RESULTING FROM TWO VIOLATIONS OF STAY ARE VOID AB INITIO in the 2nd Circuit. EVERYTHING WRITTEN BY [Appellee's counsel] IS VOID AND MEANINGLESS AS [their] CLIENT'S ACTIONS, RESULTING FROM STAY VIOLATIONS, ARE VOID AB INITIO[.]". *Id.* at 2. Appellant's diametric opposition to Appellee's legal arguments and its version of the facts is not a sufficient basis to punish Appellee. Having considered the record, the Court denies Appellant's motion for sanctions as baseless.

### c. Amended Motion for Default and to Strike Improper Pleadings

Appellant asks that the Court strike certain of Appellee's pleadings—either because they purportedly contain perjury or because they do not conform with procedural rules—and to find Appellee in default. ECF No. 26 at 1. Here, again, the statements in question appear to be Appellee's legal positions and assertions, all of which contradict Appellant's position. For similar reasons articulated in the Court's denial of Appellant's motion to sanction Appellee's pleadings, the Court declines to strike any of Appellee's pleadings.

As to Appellant's procedural argument, he states that Appellant has violated Federal Rule of Bankruptcy Procedure 8012, which requires that a disclosure statement be filed by a nongovernmental corporation party in connection with a bankruptcy appeal proceeding before a district court. Under this rule, a party must submit its statement either with the filing of the

principal brief or upon the filing of a motion, response, petition, or answer in the district court (whichever occurs first), unless a local rule requires an earlier filing.  Fed. R. Bankr. P. 8012(c)(1).  Appellee reminds the Court that Rule 8012 statements are meant "to assist [the] district court . . . judges in determining whether they should recuse themselves."  ECF No. 34 at 4–5 (citing Bankruptcy Rule 8012 Notes).

Although Appellee indeed filed its Rule 8012 statement after it began filing responses to Appellant's filings in this case, Appellant points to no precedent in which a sanction—especially one as severe as striking pleadings or entering a default judgment—should issue for failure to strictly adhere to Rule 8012.  Accordingly, the amended motion for default and to strike is denied.

### d.  Motion to Enjoin Appellant From Filing Further Vexatious Pleadings

Appellee seeks to bar Appellant from filing further "vexatious" pleadings, but because the Court disposes of this appeal in this opinion, Appellee's motion is moot.  *See* ECF No. 34 at 11–19.

### CONCLUSION

For the reasons stated above, the Court **AFFIRMS** in part the Bankruptcy Court's judgments, **REMANDS** the case for further proceedings consistent with this opinion, and **DENIES** all of the pending motions and requests for relief before the Court.

The Clerk of Court is respectfully directed to remand this case (as consolidated) to the United States Bankruptcy Court for the Southern District of New York.  The Clerk of Court is also directed to terminate all motions pending (as of September 29, 2025) in Case Nos. 25-cv-1001 and 25-cv-1014 in light of the Court's disposition of the appeals and all pending motions in this opinion.

**SO ORDERED.**

Dated:    **September 29, 2025**
          **New York, NY**

_____
     **ANDREW L. CARTER, JR.**
     **United States District Judge**